**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| REGINA GREENE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 23-302-TFM-B |
| | * | |
| TRUIST BANK, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**REPORT AND RECOMMENDATION**

This action is before the Court on Plaintiff Regina Greene's Request for Leave to Amend and to Request Discovery (Doc. 43); Defendant Truist Bank's[1] ("Truist") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 47); Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC's ("Trans Union") (collectively, "CRA Defendants") Joint Motion to Dismiss and Memorandum in Support (Doc. 48); Plaintiff's "Motion for Leave to Amend and to Dismiss [CRA Defendants'] Joint Motion to Dismiss and Memorandum in Support" (Doc. 53); and Plaintiff's "Motion for Leave to Amend and to Dismiss Defendant Truist Bank's Motion to Dismiss" (Doc. 54).

---

[1] In addition to containing claims against Truist Bank, the second amended complaint includes causes of action against "Truist Bank – Asset Disposition" and "Truist dba BB&T." (See Doc. 45 at 41-54). As the proper legal entity appears to be Truist Bank, its motion to dismiss is directed at each of the claims against Truist Bank as well as the claims asserted against "Truist Bank – Asset Disposition" and "Truist dba BB&T." (See Doc. 2; Doc. 47 at 1).

This action has been referred to the undersigned Magistrate Judge for consideration and disposition or recommendation on all pretrial matters as may be appropriate pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S).  (Doc. 7).  Upon consideration of all matters presented, the undersigned **RECOMMENDS,** for the reasons stated herein, that Plaintiff's request for Leave to Amend and for Discovery (Doc. 43) be **DENIED,** that Defendants' Motions to Dismiss (Docs. 47, 48) be **GRANTED,** and that Plaintiff's Request for Leave to Amend (Docs. 53, 54) be **DENIED as futile.**

## I. <u>BACKGROUND</u>

Plaintiff Regina Greene ("Greene"), proceeding *pro se*, commenced this action in the Circuit Court of Mobile County, Alabama with the filing of a "letter" which was construed as a complaint in a civil action.  (<u>See</u> Docs. 1-1, 1-2).  Truist, with the consent of the CRA Defendants, removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  (Doc. 1). Defendants filed motions to dismiss Greene's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and in response thereto, Greene filed an amended complaint.  (Docs. 4, 10, 37).

Because Greene's first amended complaint was filed less than twenty-one days after Defendants served their respective Rule 12(b)(6) motions to dismiss, the first amended complaint was

2

permitted as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  In an order dated September 19, 2023 (Doc. 41), the Court struck Greene's first amended complaint as an impermissible shotgun pleading.  Greene was granted leave to file a second amended complaint that complied with the Federal Rules of Civil Procedure.  (Doc. 41).  Greene filed her second amended complaint on October 10, 2023, and it is the operative pleading before the Court.  (Doc. 45).

Greene's second amended complaint centers on a Retail Installment Sale Contract ("RISC") that she entered into in 2020 for the purchase of a 2018 Mercedes GLC300W.  (See Doc. 65 at 2). Under the RISC, Greene was required to make seventy-two monthly payments of $645.75 beginning on October 15, 2020.  (Id.).  The RISC also provides that:

> If you break your promises (default), we may demand that you pay all you owe on this contract at once.  Default means:
>
> - You do not pay any payment on time;
>
> - You give false, incomplete, or misleading information during the credit application;
>
> - You start a proceeding in bankruptcy or one is started against you or your property; or
>
> - You break any agreements in this contract.

(Doc. 65 at 4).

The RISC goes on to provide:

We may take the vehicle from you.  If you default, we may take (repossess) the vehicle from you if we do so peacefully, and the law allows it. . . .

(Id.).

The RISC also provides:

This contract contains the entire agreement between you and us relating to this contract.  Any change to this contract must be in writing and we must sign it.  No oral changes are binding.

(Id. at 5)

The RISC reflects that the contract was entered into between Greene and Mercedes Benz of Mobile, and that as seller, Mercedes Benz of Mobile assigned its interest in the contract to SunTrust Bank.  (Id.).  The corporate disclosure statement filed by Truist reflects that "Truist Bank was formed on December 7, 2019 by the merger of Branch Banking and Trust Company and SunTrust Bank." (Doc. 2 at 2).  Truist has alleged and Greene has not disputed that Truist is the successor to SunTrust Bank.

Greene alleges, in her second amended complaint, that she called Truist on April 6, 2023 and made a "valid payment arrangement" with respect to her vehicle and that pursuant to the agreement, she was allotted ten days to provide her outstanding vehicle payment.  (Doc. 45 at 5).  According to Greene, she was not informed of whether the ten-day timeframe included weekends. (Id.).  Greene further alleges that on April 19th, 2023, she called

4

Truist regarding the vehicle and was told that "[t]he vehicle was repossessed due to an invalid payment arrangement on file." (Id.). Greene contends that on June 13, 2023, her vehicle "was wrongfully and illegally sold" notwithstanding the fact that she had reached an oral payment agreement with Truist. (Id. at 6). Greene also asserts that on June 23, 2023, she received a certified letter from Truist indicating that she had a deficient balance in the amount of $12,887.37. (Id. at 6). Per Greene, this reporting is fraudulent because "she never had contractual obligations with 'Truist dba BB&T.'" (Id. at 7). Greene also asserts she lodged multiple disputes with Truist and the CRA Defendants, who verified the account as belonging to her in May and July of 2023. (See id. at 7-9).

Greene further alleges that the CRA Defendants have continued to improperly report a deficient balance of $12,958.00 on her account and have failed to "correct" the account, even though she "inform[ed] them of [her] dispute regarding Truist Bank breach of contract . . . [and] that the alleged account was not [hers]." (Id. at 15). And, in the section of her second amended complaint purporting to state her "legal claim," Greene alleges that "[t]his is a Fair Credit Reporting Act case[,] [15 U.S.C. § 1681 et seq.,] based on the Defendants' inaccurate reporting of an automobile credit account which [she] did not owe, and which [she] believes was incurred by and through negligent enablement of identity

fraud." (Id. at 4). Greene further asserts that "[t]his is a Fair Debt Collection Practices Act case involving wrongful and illegal repossession and wrongful and illegal sale of a vehicle based on a breach of contract due to deceptive business actions which maliciously and recklessly forfeited Plaintiff's rights"; however, the operative complaint does not include a count under the Fair Debt Collection Practices Act. (Doc. 45 at 5).

Greene asserts a claim against Truist under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b and 1681s-2(b); a breach of contract claim, purportedly under 41 U.S.C. § 6503; a defamation claim, purportedly under 28 U.S.C. § 4101; a negligence and/or recklessness claim; and a "negligent enablement of identity fraud" claim purportedly under 18 U.S.C. § 1028. (See Doc. 45 at 32-41).

For relief, Greene requests actual and punitive damages, pre-judgment and post-judgment interest, statutory damages in the amount of $1000, reasonable fees incurred in bringing this action, and any other relief which this Court deems proper. (Doc. 45 at 79-81). Greene also seeks to have the "'Repossession' and 'Charge Off'" removed from her credit report. (Id. at 79).

Defendants have moved to dismiss Greene's second amended complaint on the grounds that it constitutes an impermissible shotgun pleading and fails to comply with the Court's prior order directing Greene to correct pleading deficiencies. (Doc. 47 at 7-8; Doc. 48 at 6). Defendants further contend that the second

amended complaint fails to state a claim upon which relief can be granted. (Doc. 47 at 8-17; Doc. 48 at 6-12).

Presently pending before the Court is Truist's motion to dismiss (Doc. 47); the CRA Defendants' Joint Motion to Dismiss and Memorandum in Support (Doc. 48); Greene's Request for Leave to Amend and for Discovery (Doc. 43); and Greene's "Motion for Leave to Amend and to Dismiss [Defendants'] Motion[s] to Dismiss" (Docs. 53, 54). The Court construes Greene's various motions as responses in opposition. Truist and the CRA Defendants timely filed replies (Docs. 59, 60); thus, the motions are ripe for resolution.

## II. <u>STANDARDS OF REVIEW</u>

Rule 8(a)(b) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted). A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, the factual allegations must be "plausible" and must be enough to raise a right to relief beyond the speculative level. <u>Twombly</u>, 550 U.S. at 555; <u>see also</u> <u>Edwards</u>

v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiffs. Erickson v. Pardus, 551 U.S. 89, 93-4 (2007). However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations and internal quotation marks omitted); see also Doe v. Samford Univ., 29 F.4th 675, 687-88 (11th Cir. 2022) (the plaintiff's allegations that an investigative report contained "prejudicial" and "inflammatory" statements about him are "not entitled to the assumption of truth" because these allegations are "labels" and "[un]supported by factual allegations") (citations omitted).

When considering motions to dismiss, the Court engages in a two-step approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-

pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" <u>American Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 682).

Also, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, "'this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998)). Even a pro se litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

## III. <u>DISCUSSION</u>

### A. Pleading Deficiencies

Defendants assert that Greene's second amended complaint should be stricken because it still constitutes a "shotgun" pleading and

it is replete with labels and conclusory statements notwithstanding the Court's pleading directives. (Doc. 47 at 7-8; Doc. 48 at 6). Upon review of Greene's second amended complaint, the undersigned finds that there is no question that the complaint is not the model of clarity. It is indeed replete with redundant, conclusory assertions which fall short of being "facially plausible," and which unnecessarily increase the length of the pleading. Also, while the complaint does not incorporate *every* previous paragraph into each new count, it still incorporates the same 169 factual paragraphs to support all of her claims against each Defendant. (See Doc. 45 at 32-77).

Notwithstanding, the second amended complaint cannot be uniformly dismissed as a shotgun pleading because it is not "virtually impossible" to discern which factual allegations support Greene's claims against each Defendant. Inform Inc. v. Google LLC, 2022 U.S. App. LEXIS 24107, at 12, 2022 WL 3703958, at *4 (11th Cir. Aug. 26, 2022) (per curiam) (finding that while the amended complaint displayed some of the characteristics of a shotgun pleading, it gave defendants' adequate notice of claims against them) (citing Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)); N.R. v. Sch. Bd. of Okaloosa Cnty., 418 F. Supp. 3d 957, 976, n.13 (N.D. Fla., September 30, 2019) (noting that several counts in the complaint incorporated all 139 paragraphs of the factual allegations and included multiple

defendants, that the 99 page complaint was an example of poor pleading practice and that attempting to decipher the specific allegations against each defendant unduly prolonged the court's review of the motions to dismiss; however, the court declined to dismiss the complaint as a shotgun pleading or further delay discovery for re-pleading since the court was able to review the claims substantively).  Accordingly, the Court finds that while Greene's second amended *pro se* complaint is not a model pleading, it provides Defendants with adequate notice of the claims against them.

**B. Truist Bank's Motion to Dismiss (Doc. 47)**

The subject of Greene's second amended complaint involves a RISC that she entered into on August 31, 2020 for the purchase of a Mercedes Benz. (See Docs. 45, 65).  A court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6) and must accept the factual allegations in the complaint as true.  See Iqbal, 556 U.S. at 678.  Because the parties have filed the RISC, and Greene has submitted an email dated April 25, 2023 that she asserts she wrote to Truist in regards to this dispute (Docs. 24-1 at 39; Doc. 65), and because the authenticity of these documents do not appear to be in dispute, the Court may consider the documents as part of the pleadings in this case and may consider them in resolving the motions to dismiss.  See Brooks v. Blue Cross and Blue Shield of Fla., Inc.,

116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal[.]").  The RISC clearly reflects that Mercedes, the original seller of the vehicle at issue, assigned its interest in the contract to SunTrust.  (See Doc. 65).  Defendants assert that SunTrust merged with Branch Banking & Trust Company in 2019 to form Truist Bank.  Greene does not dispute that Truist became the successor in interest to SunTrust, and that as such, it was entitled to enforce the RISC.  In fact, in her complaint and her correspondence, Greene acknowledges that she had fallen behind on her vehicle payments, and that on April 6, 2023, she reached out to Truist to try to make arrangements to pay the outstanding amounts due under the RISC.  Thus, regardless of whether Truist was an original party to the RISC when Greene purchased her vehicle, Greene acknowledges that having fallen behind on the vehicle payments due under the RISC, she entered an oral agreement with Truist to make a payment arrangement.  All of Greene's claims appear to be premised on her contention that Truist orally agreed to give her ten days to make a payment but did not specify whether the ten-day period included weekends, and then wrongfully repossessed her vehicle and erroneously reported a deficiency balance of $12,887.00.

As a threshold matter, any purported claim by Greene for wrongful repossession must fail because the RISC provides for repossession of the vehicle for nonpayment, and Greene acknowledges that she fell behind on the required payments. (Doc. 24-1 at 39). While Greene contends that she reached an oral agreement with Truist to make a payment, the RISC expressly prohibits oral modifications to the contract. (Doc. 65 at 5). Thus, accepting Greene's factual assertions as true, she has failed to establish a wrongful repossession claim against Truist, as the successor to SunTrust Bank under the RISC.

Greene also alleges that May 2023 through September 2023, Truist accessed her consumer reports without a legitimate reason in violation of 15 U.S.C. § 1681(b). (Doc. 45 at 32-5). According to Greene, 15 U.S.C. § 1681b(f) prohibits any person from obtaining or using consumer reports for a purpose other than the permissible purposes listed in 15 U.S.C. § 1681b(a). Truist asserts that Greene's claim under 15 U.S.C. § 1681(b) fails because the provision does not apply to furnishers of credit information like Truist. (Doc. 47 at 10). Truist further alleges that Greene has failed to identify when the report was obtained and that in any event, Greene admits that she had an account that Truist was trying to collect during the relevant timeframe, and debt collection is a permissible basis for obtaining a report. (Id. at 10-11). Thus, she has failed to state a claim.

Congress enacted the FCRA, in part, to protect consumer privacy and did so, in part, by limiting the furnishing of credit reports to "certain statutorily enumerated purposes." TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001). The FCRA creates a private right of action under which injured consumers can recover damages caused by negligent and willful violations of the Act. Id.; see also 15 U.S.C. §§ 1681n, o.

The FCRA prohibits any person from "us[ing] or obtain[ing] a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under [§ 1681b]; and (2) the purpose is certified in accordance with section 1681e . . . ." 15 U.S.C. § 1681b(f). A user of a consumer report may be held liable for willful noncompliance under § 1681n if he obtained a consumer report from a consumer reporting agency "under false pretenses or knowingly without a permissible purpose." 15 U.S.C. § 1681n(b). Liability may also be assigned for negligent noncompliance under § 1681o if a user "is negligent in failing to comply with any requirement imposed under [§ 1681]." 15 U.S.C. § 1681o(a).

To state a claim for improperly using or obtaining a consumer report, a "Plaintiff must plead the following elements: (i) that there was a consumer report; (ii) that Defendant used or obtained it; (iii) that Defendant did so without a permissible statutory purpose; and (iv) that Defendant acted with the specified culpable

14

mental state." Ruk v. Crown Asset Mgmt., LLC, 2017 U.S. Dist. LEXIS 41797, at *22-3, 2017 WL 3085282, at *8 (N.D. Ga. Mar. 22, 2017) (internal quotation marks omitted), report and recommendation adopted, 2017 U.S. Dist. LEXIS 41797, 2017 WL 3085686 (N.D. Ga. June 8, 2017).

The FCRA provides a comprehensive list of permissible purposes for which a consumer reporting agency may furnish a consumer report. 15 U.S.C. § 1681b(a). This list includes the furnishing of a consumer report "[t]o a person which [the reporting agency] has reason to believe intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or *review or collection of an account of the consumer.*" 15 U.S.C. §1681b(a)(3)(A) (emphasis added).

Greene has alleged, in a conclusory fashion, that during the May through September 2023 timeframe, Truist accessed her consumer report for an improper purpose; however, aside from her conclusory assertions, Greene has not alleged sufficient facts to state a claim that Truist obtained her credit report without a permissible purpose and did so willfully or negligently. Obarski v. Associated Recovery Sys., 2014 U.S. Dist. LEXIS 69401, at *6, 2014 WL 2119739 *2 (D.N.J. May 20, 2014) ("[T]he Complaint also fails to allege any facts that show that Defendant obtained his credit report for any purpose other than to collect a delinquent account."); Jacques

15

v. Solomon & Solomon P.C., 886 F. Supp. 2d 429, 435 (D. Del. 2012) ("The complaint does not allege any facts to suggest that Northland did not intend to collect a debt from plaintiff."). Moreover, the Eleventh Circuit has held that debt collection is a permissible purpose under the FCRA. See Rumbough v. Experian Info. Sols., Inc., 626 F. App'x 224, 226 (11th Cir. 2015) ("[D]ebt collection . . . is a permissible use for consumer reports."). Here, Greene acknowledges that she reached out to Truist because she was behind on her car payments, and that she reached an oral agreement with a Truist representative that afforded her the opportunity to make a payment and retain her vehicle. Accepting Greene's assertions as true, Truist was entitled to access Greene's credit report in conjunction with its debt collection activities. Accordingly, Greene's claim must fail.

In the second count of her complaint, Greene appears to assert that Truist was informed that she did not owe for the alleged balance being reported, but Truist failed to conduct a bona fide investigation and furnish accurate information for her consumer file. (Doc. 45 at 35-8). Truist acknowledges that section 1681s-2(b) requires furnishers of information such as itself to "conduct an investigation after receiving notice from a CRA of a dispute lodged by a consumer regarding information provided by the furnisher," but argues that Greene has not stated any inaccuracy in the credit report. (Doc. 47 at 11). In order to state a FCRA

claim against a furnisher, a plaintiff must show 1) that the furnisher received notice from a CRA that the consumer disputed the tradeline; 2) the furnisher breached its duty to conduct a reasonable investigation into the dispute; and 3) had the furnisher conducted a reasonable investigation, "the furnisher would have discovered that the report was inaccurate or incomplete, triggering the furnisher's obligation to correct the information." Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312-13 (11th Cir. 2018).

As noted, Truist argues that Greene has not stated a claim because she has not identified any inaccurate information in the report. (Doc. 47 at 11). According to Truist, Greene does not allege that she made all of the payments required under the retail contract. And her contention that the account being reported by Truist was not hers is belied by the RISC that she has acknowledged signing. (See Doc. 54 at 4). As best the undersigned can discern, Greene is contending that Truist reported that she owed more than $12,000 on an auto account but the account was not hers because she never had an account with Truist. Greene's contention flies in the face of her own factual assertions. First, she acknowledges that she entered into the RISC requiring her to make seventy-two monthly payments of $645.75 beginning on October 15, 2020 for the purchase of the vehicle. Second, Greene does not contend that she made the payments as required under the RISC but instead alleges

that on April 6, 2023, she contacted Truist to make payment arrangements for the subject vehicle, that she reached an oral agreement with a Truist representative giving her ten days to make the payments, and that the car was repossessed on April 19th, 2023. Greene has not alleged nor proffered any facts that suggest that under these circumstances, had Truist conducted a reasonable investigation, "[it]would have discovered that the report was inaccurate or incomplete." Felts, 893 F.3d at 1313. To the contrary, the express language of the RISC required modifications to be in writing, and in any event, Greene does not contend that she brought the account current prior to the repossession on April 19th. Simply put, Greene has proffered no facts that suggest Truist's report was inaccurate. Thus, Greene's claim must fail.

In count three of the second amended complaint, Greene alleges that Truist breached the parties' oral contract when it did not honor the oral agreement affording her ten days to make a payment. (Doc. 45 at 38-9). As asserted by Truist, to the extent Greene is attempting to assert a standalone claim for breach of contract, that cause of action is presumed to arise under state law, not federal law. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Tangen v. Ideacom of the Gulf Coast, Inc., 590 F. App'x 836, 838 (11th Cir. 2014) (per

curiam) (internal quotation marks omitted) (quoting <u>Shaffer v. Regions Fin. Corp.</u>, 29 So.3d 872, 880 (Ala. 2009)). Greene has not plead facts plausibly suggesting that each of the above-listed elements are met. She has not identified a contractual provision that she believes has been breached. Greene's assertions about an oral contract are inconsistent with the clear and unambiguous terms of the RISC which requires any modifications to be in writing in order to be valid. In the absence of a written modification, Greene's breach of contract claim based on an oral agreement must fail.

In count four, Greene asserts a defamation claim under 28 U.S.C. § 4101 and argues that Truist defamed her by stating that "no payment arrangement [was] made" when in fact, she had reached an oral agreement with one of the Bank's representatives, and made a payment. (Doc. 45 at 40). To establish a defamation claim in Alabama, the plaintiff must establish: "(1) the defendant was at least negligent (2) in publishing (3) a false and defamatory statement to another; (4) that statement concerned the plaintiff; and (5) the claim is actionable either without having to prove special harm or upon allegations and proof of special harm." <u>Davis v. Legal Servs. Ala., Inc.</u>, 19 F.4th 1261, 1268 (11th Cir. 2021) (quoting <u>Gary v. Crouch</u>, 867 So.2d 310, 315 (Ala. 2003)). Truist asserts that Greene has failed to state a claim because the alleged statement is not defamatory, nor is it false because the RISC

19

required any modifications, such as payment arrangements, to be in writing. Truist further asserts that there is no allegation that the statement was published to third parties; thus, Greene has failed to establish a plausible defamation claim. The undersigned finds that accepting Greene's assertion that an oral payment agreement was reached, such could not modify the clear and unambiguous requirement in the RISC which requires all modifications to be in writing. Because the oral agreement was not reduced to writing, it did not constitute a valid payment arrangement; thus, the purported statement that "no payment arrangement" existed was not false. Moreover, Greene does not allege that said statement was published to anyone other than herself. Accordingly, Greene's defamation claim must fail.

In count five, Greene alleges negligence. In Alabama, a claim for negligence requires (1) "existence of a duty on the part of the defendant; (2) a breach of that duty; (3) existence of a causal relationship between the defendant's conduct and the plaintiff's injury; and (4) a resulting injury to the plaintiff." City of Montgomery v. Patterson, 80 So.3d 264, 267 (Ala. Civ. App. 2011) (internal quotation marks omitted) (quoting Chatman v. City of Prichard, 431 So.2d 532, (Ala. 1983)). As Truist correctly asserts, the duty that can support a negligence claim must not be "predicated exclusively on duties, actions, and omissions related to [defendant's] performance of its . . . contract." Gustin v.

20

<u>Vulcan Termite & Pest Control, Inc.</u>, 331 So.3d 601, 605 (Ala. 2020).  In Alabama, where a negligence claim is predicated solely on an alleged failure to comply with contractual obligations, judgment is properly entered for the defendant.  <u>See</u> <u>Nucor Steel Tuscaloosa, Inc. v. Zurich Am. Ins. Co.</u>, 343 So.3d 458, 476 (Ala. 2021) ("The 'mere failure to perform a contractual obligation is not a tort, and it furnishes no foundation for an action on the case.'").  Greene has not identified any duty Truist owed under Alabama law, but instead asserts that Truist had "a duty under the terms of the contract to properly notify Plaintiff in writing of any concerns or issues of the contract[.]"  (Doc. 45 at 40).  However, as recognized by the Alabama Supreme Court, any duty that allegedly arises out of a contractual agreement cannot form the basis of a tort claim for negligence.  <u>See</u> <u>Nucor Steel Tuscaloosa, Inc.</u>, 343 So.3d at 476.  Accordingly, Greene has failed to state a negligence claim.

In count six, Greene alleges "negligent enablement of identity fraud" and cites 18 U.S.C. § 1028.  (Doc. 45 at 40-41). Greene contends that Truist "is negligent in inaccurately, maliciously, fraudulently reporting on Plaintiff's credit report of an alleged account" with an unnamed entity.  (<u>Id.</u> at 41).  As best the undersigned can discern, this appears to be a regurgitation of Greene's negligence claim and her claim under 15 U.S.C. § 1681 that Truist reported that she owed on an auto

account, but the account was not hers because she never had an account with Truist.  For the reasons discussed above, Greene has failed to state a plausible claim.

**B. The CRA's Motion to Dismiss (Doc. 48)**

The CRA Defendants assert that Greene has not stated a FCRA claim because her claims are based on her own subjective opinion regarding her dispute with Truist and the CRA Defendants are not equipped to adjudicate legal disputes between consumers and furnishers of information to CRAs.  (Doc. 48 at 8-10).  The CRA Defendants also contend that Greene has failed to allege factual inaccuracies in her consumer report and note that Greene and Truist dispute whether the vehicle was wrongly repossessed or whether a deficiency amount is owed.  (Id. at 6-7).  They further assert that 15 U.S.C. § 1681s-2(b) only applies to furnishers and not to CRAs, and that Greene has failed to state a claim under § 1681c because she has not pointed to any prohibited information that the CRA Defendants provided.  (Id. at 11).  They further assert that Greene's state law claims are preempted and that the claims are entirely unintelligible. (Id. at 11-12).

Greene's claims against the CRA Defendants are difficult to decipher, but the crux of her claims appear to be that the CRA Defendants reported inaccurate information regarding her dispute with Truist.  Section 1681i of Title 15 establishes procedures for a consumer reporting agency to follow when a consumer disputes the

accuracy or completeness of information in the consumer's file at the agency.  <u>See</u> 15 U.S.C. § 1681i(a).  Among other things, § 1681i[2] requires consumer reporting agencies to "conduct a reasonable reinvestigation" when a consumer disputes an item in her file, and if the agency finds that the information is inaccurate, incomplete, or cannot be verified, it must "promptly delete" or modify the item and notify the furnisher of the information.  <u>Id.</u>  To state a claim under this section, the plaintiff must allege facts showing, at a minimum, that the agency's file contained factually inaccurate information and that the agency's investigation of the dispute was not reasonable. <u>Losch v. Nationstar Mortg. LLC</u>, 995 F.3d 937, 944 (11th Cir. 2021); <u>see</u> <u>Collins v. Experian Info Sols., Inc.</u>, 775 F.3d 1330, 1335 (11th Cir. 2015).  When evaluating whether information in a credit report is accurate, the court must "look to the objectively reasonable interpretations of the report."  <u>Holden v. Holiday Inn Club Vacations, Inc.</u>, 98 F.4th 1359, 1367 (11th Cir. 2024) (internal quotation marks omitted) (citing <u>Erickson v. First Advantage Background Servs. Corp.</u>, 981 F.3d 1246, 1252 (11th Cir. 2020)).  A report must be either factually incorrect or "objectively likely

---

[2] As noted by Defendants, one of the statutory provisions cited by Greene only applies to furnishers and another one imposes criminal rather than civil liability. (Doc. 48 at 11).

to mislead its intended user, or both" to violate the FCRA's standard for accuracy.  Id. at 1367-68.

Here, Greene has failed to state a claim under 15 U.S.C. §§ 1681i or 1681n against the CRA Defendants.  First as noted *supra*, Greene has acknowledged the validity of the RISC and has also acknowledged throughout her complaint and correspondence that she fell behind in her vehicle payments to Truist.  (See Doc. 45). Second, while there is a dispute between Greene and Truist about whether an oral agreement was reached, what is not in dispute is the fact that the unambiguous terms of the RISC provides that any modifications must be in writing.  Greene has not alleged nor pointed to any written modification of their agreement.  She has also failed to allege facts suggesting that she was not behind on her vehicle payments at the time her vehicle was repossessed or that the deficiency amount is less than what has been reported. Further, aside from her conclusory allegations, Greene has not alleged any facts suggesting that the CRA Defendants did not conduct a reasonable investigation into the dispute between her and Truist.  Accordingly, her claims against the CRA Defendants are due to be dismissed.

**C. Greene's Request to Amend**

A district court generally must allow a plaintiff proceeding *pro se* an opportunity to amend his complaint but need not permit an amendment if it would be futile.  Woldeab v. DeKalb Cnty. Bd of

24

Educ., 885 F.3d 1289, 1291-92 (11th Cir. 2018); L.S. ex rel Hernandez v. Peterson, 982 F.3d 1323, 1332 (11th Cir. 2020) ("Leave to amend would be futile if an amended complaint would still fail at the motion to dismiss or summary-judgment stage."). "A district court does not abuse its discretion by denying leave to amend as futile where a plaintiff fails to identify any new facts that might form the basis for stating a claim successfully." Baptiste v. Doe, 2021 U.S. App. LEXIS 38189, at *5, 2021 WL 6112976 at *2 (11th Cir. 2021).

Here, Greene's first amended complaint was stricken and she was given specific pleading directives to cure her complaint's deficiencies. Her operative pleading is her second amended complaint, and she has still failed to state a plausible claim for relief. Indeed, her factual allegations either do not support her claims or are contradicted by her own allegations and by the exhibits she incorporated into the amended complaint. Given this, there is no reason to believe that there is any amendment that she could make to her pleading that might permit her to state a plausible claim for relief against any of the Defendants. Thus, the undersigned finds that affording her yet another opportunity to amend her pleading a third time would be futile. See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (stating that a district court need not allow an amendment where amendment would be futile).

## IV.  CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Truist and the CRA Defendants' Motions to Dismiss (Docs. 47, 48) be **GRANTED** and Greene's requests for discovery[3] and leave to amend (Docs. 43, 54, 55) be **DENIED as futile.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper

---

[3] Greene has not cited any reasons that would justify allowing her to conduct discovery in this case given her failure to state a plausible claim.

26

objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **22nd** day of **August, 2024.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**